IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERARDO NEGRON, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 12-3780 |
| CAROLYN W. COLVIN,[1] | : | |
| Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                         March     27, 2013

  This action was brought pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), which denied the application of Gerardo Negron (alternatively "Negron" or "Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* (the "Act"). Presently before the Court is Plaintiff's Amended Motion for Summary Judgment (Doc No. 8), with his supporting brief ("Pl. Br.") (Doc. No. 7); Defendant's Response to Request for Review of Plaintiff ("Def. Br.") (Doc. No. 9); and the record of the proceedings before the Administrative Law Judge ("ALJ") and the Appeals Council (hereinafter "R."). Plaintiff asks the Court to vacate the Commissioner's final administrative decision and further requests that this Court find that he has been disabled as alleged. (Pl. Br. at 22.) The

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

Commissioner seeks the entry of an order affirming the decision of the ALJ that Plaintiff was not disabled. For the reasons set out below, we recommend that the Court deny Plaintiff's motion.

I.  **FACTUAL AND PROCEDURAL HISTORY**

Negron protectively filed the application giving rise to this litigation on May 11, 2009. (R. 116-18, 126.) He was 45 years old at the time of his application and possessed a 5th grade education from Puerto Rico. (R. 39.) He was not able to communicate in English. (R. 25, Finding No. 7.) Negron contended that his disability began on May 1, 2009, following a stroke that he suffered in April 2009. He underwent a further surgical procedure in August 2009 to open a constricted carotid artery. (R. 236-37.) He also suffered from uncontrolled hypertension, which put him at significant risk to have recurrent strokes, and uncontrolled diabetes mellitus, which was causing peripheral neuropathy. (R. 267.) He was also diagnosed with cerebral cortical atrophy, which was expected to slowly but progressively get worse, and memory loss that was predicted to worsen if Negron did not control his hypertension and diabetes. (R. 267.)

At the time of his stroke, Plaintiff had not been working for more than five years. He had been employed for three years as a machine operator, which was unskilled work but required the performance of tasks at the light exertional level. He reported that he stopped working due to transportation issues and then stayed out of work to care for his children.[2] (R. 119-20, 130-31.) When asked around the time of his application about how his illnesses or conditions limited his ability to work, he responded that since the stroke, he had problems with his vision

---

[2] Negron testified that he had five children, whom he raised by himself, and that at the time of
*(continued…)*

and numbness to his left arm and hand. He asserted that due a loss of strength in his left hand, he was unable to carry and hold things. He also complained of memory loss. (R. 130.)

After his claim was initially denied by the state agency, Negron requested a hearing, which was held on September 1, 2011. The ALJ issued his decision on October 6, 2011 finding that Negron was not disabled. His decision was based upon his finding that Negron retained the residual functional capacity to perform work at the light exertional level --- although subject to a host of positional, manipulative, environmental, and other non-exertional limitations --- and that he would be able to make a successful adjustment to other work that exists in significant numbers in the national economy even though he could not perform his past work as a machine operator. (R. 20-26.) Negron requested review in the Appeals Council, but that body found no basis to set aside the ALJ's decision, which thus became the final decision of the Commissioner. (R. 1-5.) This litigation followed.

## II. STANDARD OF REVIEW

This Court must determine whether substantial evidence supports the Commissioner's final decision. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford*, 399 F.3d at 552. The factual findings of the Commissioner must be accepted as conclusive, provided they are supported by

---

the hearing he was living with two of them. (R. 37.)

substantial evidence. *Richardson*, 402 U.S. at 390 (citing 42 U.S.C. § 405(g)); *Rutherford*, 399 F.3d at 552. The review of legal questions presented by the Commissioner's final decision, however, is plenary. *Shaudeck v. Commissioner of Social Security Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

## III.  DECISION UNDER REVIEW

The issue before the ALJ at the time of the September 15, 2011 decision was whether Negron had been disabled within the meaning of the Act at any time since his May 11, 2009 SSI application date. In making this determination, the ALJ relied upon the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a). At Step One, the ALJ found that Negron had not engaged in substantial gainful activity at any time since his application date. (R. 18, Finding No. 1.) At Step Two, he found that Negron demonstrated that he suffered from a severe medically-determinable impairment, e.g., one that causes functional limitations and has more than a *de minimus* effect on his ability to perform basic work activities. (R. 18, Finding No. 2.) At Step Three, the ALJ concluded that Negron did not have an impairment or combination of impairments that satisfy the criteria of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 and therefore could not establish his entitlement to benefits on that basis, requiring that the evaluation process continue. (R. 18, Finding No. 3.) Plaintiff does not challenge these findings.

The ALJ then proceeded to assess Negron's residual functional capacity ("RFC"), which is defined as "the most [a claimant] can still do despite [his] limitations," 20 C.F.R. § 416.945(a)(1). He made the following finding:

4

> **4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is limited to jobs in Spanish exclusively that do not** [sic] **instructions in English. Mr. Negron is limited to work with no heights, few steps, no use of hazardous machinery. Reaching, handling, and fingering can be frequent with his dominant upper extremities; however, the left hand can be used for support in activities involving the right upper extremity. Mentally, the claimant is limited to understanding, remembering, and carrying out simple Spanish instructions. Due to ongoing stroke residuals, the claimant is limited to jobs with no more than occasional squatting, crawling, kneeling, stopping, or crouching.**

(R. 20-21, Finding No. 4 (bold in original).) At Step Four, the ALJ found that Negron was unable to perform his past work. (R. 25, Finding No. 5.) Proceeding to Step Five, however, considering Negron's age, education, work experience, and RFC, and relying upon testimony offered at the hearing by a vocational expert ("VE"), the ALJ concluded that Negron could perform the requirements of representative occupations such as bakery line worker, marker, and sorter. (R. 25-26 & Finding No. 9.) Accordingly, he found that Negron was not disabled.

## IV. DISCUSSION

Negron asserts two bases for vacating the ALJ's decision and instead finding him disabled and entitled to benefits. First, he contends that the ALJ's RFC finding that he could perform some types of work at the light exertional range notwithstanding his various physical and mental limitations was not supported by the evidence. (Pl. Br. at 8.) Second, he challenges the ALJ's rejection of his testimony that he could not go anywhere by himself due to mental impairments which, if credited, would have required the ALJ to conclude that no work was available for him. (*Id.*)

### A. The ALJ's RFC finding

In his brief, Plaintiff challenges the extent to which the ALJ's RFC finding is supported by the record, both with respect to physical limitations as well as limitations arising from mental impairments. We first examine the aspects of the RFC finding reflecting Negron's physical impairments and then address the support for the ALJ's finding incorporating mental limitations.

#### 1. The RFC finding as to physical limitations

With respect to Negron's physical capacity, the ALJ found that he would be able to perform work at the light exertional level, as defined in 20 C.F.R. § 416.967(b), which is described as involving lifting up to 10 lbs. frequently and 20 lbs. occasionally, and either "a great deal of walking or standing" or else sitting most of the time pushing or pulling arm or leg controls. The ALJ recognized that Negron's capacity was also subject to further limitations arising from Negron's physical impairments, specifically: he could not perform any work involving heights or using hazardous machinery; he was limited to taking "few" steps and only "occasional" squatting, crawling, kneeling, stooping, or crouching; and he could not perform frequent alternating movements with his upper extremities. (R. 20-21, Finding No. 4.) The ALJ specifically found Negron to be capable, however, of "frequent" reaching, handling, and fingering with his dominant right arm and hand. Further, the ALJ found him capable of using his left hand for support of activities undertaken with the right arm and hand. (R. 20, Finding No. 4.)

Plaintiff argues that "physically[,] as a result of all the impairments as noted herein and contained within the record, his limitations, and particularly as these pertain to the left hand and its use, cannot support the finding of ability to perform work within the light range as found by

the ALJ." (Pl. Br. at 20.) Plaintiff's brief does not direct the Court's attention to what portion of the record demonstrates the error in the ALJ's finding regarding Negron's capacity for use of his left hand as a support in activities involving the right upper extremity.[3]

Consultative examiner Lawrence Brzozowski, M.D., who evaluated Negron on March 18, 2010 at the request of the state agency, noted on physical examination that Plaintiff had "very slow and clumsy" fine finger movements on the left hand. He also found "some atrophy" of the particular muscles of the back of both hands that act to spread the index, middle, and ring fingers away from the hand's midline and that assist in flexion at the knuckle joints and extension in the finger joints. He also reported, however, that Negron's finger abductors were 4/5 on the right and 3/5 on the left, his finger flexors were 5/5 on both hands, and his wrist extensors and shoulder abductors were 5/5 bilaterally. (R. 266.) When asked to complete a Medical Source Statement of Negron's ability to perform work-related physical activities, Dr. Brzozowski opined that Negron could lift and carry 10 lbs. frequently and up to 20 lbs. occasionally; that Negron was "severely limited" with respect to pushing and pulling using his left arm and shoulder; and that

---

[3] While Plaintiff recites the ALJ's RFC finding and argues that additional limitations should have been reflected in that finding, his argument does little to identify with any particularity the manner in which the ALJ's finding was deficient with respect to the physical capacity:

> In the light of the record as a whole and the ALJ's analysis of it, the RFC determination is not supported by substantial evidence. More limitations are needed to support the limitations as contained within the record that includes forgetfulness, inability to carry out detailed instructions, deficits in short term memory, and ability to cope with the demands of a work setting. More importantly, is [sic] the limited use of the left hand as a supportive element cannot be said to justify any findings as to warrant the conclusion that the clamant is capable of doing light work.

(Pl. Br. at 21.)

reaching, handling, fingering, and feeling were affected by Negron's impairments, although he did not indicate the nature or degree of limitation. (R. 261-62.) Various doctors who examined Negron at the outpatient clinic where he received his primary care observed that he had "only a little strength on the left thumb and left index finger at this particular point" (R. 376, note of Guillermo Rodriguez, M.D., 6/3/10), that he was unable to make a fist or grasp with his left hand (R. 374-75, note of Victoria G. Stella, M.D., 8/17/10), and that he continued to have left hand weakness secondary to the stroke (R. 373, note of Dr. Stella, 9/7/10), although Negron reported to his doctors that he felt "some improvement" when he attended occupational therapy for a period of time in flexibility, if not in the capacity to grab things. (R. 370 (note of 3/22/11), 368 (note of 6/23/11).) When he saw a third doctor at the clinic on July 26, 2011 for purposes of a physical before seeing a psychiatrist for depression and insomnia, that physician did not document any problems with the left hand but noted Negron's complaint of back pain and his report that "he has difficulty washing dishes." (R. 366-67.)

Plaintiff points to nothing in the medical record that would undermine the ALJ's conclusion that he retained the ability to use his left hand and arm as a support, even if he could not make a fist with it or use it to grab things. Moreover, the VE testified that the jobs he identified were ones "that you can actually perform with one hand." (R. 42.) He also clarified that these jobs would not lead to fatigue in the one hand performing the functions "because they are occupations that about two-thirds of the day you're not doing anything."[4] (R. 43.) He

---

[4] We presume the VE to have meant that during this portion of the day the employee is not actually using his hands to perform functions but rather visually inspecting the products --- not that there is a job title in which an employee "does nothing."

8

testified that the line bakery worker position, for example, is "more of an inspection occupation." (R. 43.)

There is also substantial evidence in the record as a whole that Negron retained the capacity to use his dominant right hand for the functions associated with the occupations identified by the VE and that the limitations in his left hand would not preclude him from performing those jobs. This conclusion is supported not only by the absence of medical documentation of left hand limitations beyond grip strength and the ability to make a tight fist but also Plaintiff's self-reported activities of daily living, including that he can lift 25 lbs. with his right hand, is able to drive, and can dress himself but requires assistance with zippers and shoelaces. (R. 33-35.) *See also* R. 34 (in response to question about why he would not be able to do a job taking tickets at a movie theater using only his right hand, Negron answered, "Well, if I don't have to use this hand and I can use the other hand, yes."); R. 36 (in response to question about why he would not be able to perform a job stocking shelves at a market, with the ALJ's clarification, "one at a time[,] with your right hand," Negron answered, "with this one, yes"). Plaintiff has not demonstrated that the ALJ's RFC finding with respect to his physical limitations was erroneous.

### 2. The RFC finding as to mental limitations

Plaintiff also argues that he had additional residuals from the stroke, apart from his left hand limitations, which the ALJ did not adequately incorporate into the RFC finding. He cites his forgetfulness and markedly limited ability to carry out detailed instructions. (Pl. Br. at 20.) He contends that "as a result of these impairments, [he] has moderate limitations to respond to work pressures and to respond to change in work settings," and that, "[i]n other words, [he] is

9

pretty much unable to compete in the work industry due to all of these impairments." (*Id.*) He also points to a GAF score of 45 assigned to him in June 2011, which demonstrates, as the ALJ described it in his decision, "serious ongoing symptoms." (*Id.*, citing R. 23.) He argues that "[m]ore limitations are needed to support the limitations [sic] as contained within the record that includes forgetfulness, inability to carry out detailed instructions, deficits in short term memory, and ability to cope with the demands of a work setting." (Pl. Br. at 21.)

Plaintiff does not point to any particular evidentiary source in the record that the ALJ either overlooked or undervalued aside, perhaps, from the GAF score given to him when he sought psychiatric treatment. In terms of a more detailed opinion as to Negron's limitations, the ALJ was well-aware of the opinion of consultative examiner Thomas Schwartz, Ph.D., that Negron was slightly, to "at times" moderately, restricted in his ability to carry out short, simple instructions; that he was moderately restricted in his ability to understand and remember detailed instructions; that he was moderately, to "at times" markedly, restricted in his ability to carry out detailed instructions; that he was moderately restricted in his ability to respond appropriately to work pressures in a usual work setting; and that he was "slightly" to "moderately" restricted in his ability to respond appropriately to changes in a routine work setting. (R. 23 (ALJ decision describing opinion); R. 276 (Dr. Schwartz's RFC assessment).) In comments that Dr. Schwartz included on his assessment form, he noted Negron's complaints of forgetfulness and the fact that he performed at a "modestly functional level" on mental status examination, "with mild, possibly moderate deficits in short term memory functioning." (R. 276.) With respect to the support for his opinions concerning Negron's ability to respond appropriately in the work setting, Dr.

10

Schwartz noted that Plaintiff "presented as mildly dysphoric,"[5] complained of frustration since the stroke, and "reported forgetfulness" and little use of three fingers. (R. 276.)

The ALJ found Dr. Schwartz's opinion to be "generally consistent with the minimal treatment record and the claimant's documented capabilities" and gave it "great weight." (R. 23.) The record thus supports the notion that the ALJ accepted that Negron suffered from several work-related limitations, including the very problems about which Plaintiff complained in his brief: "forgetfulness, inability to carry out detailed instructions, deficits in short term memory, and ability to cope with the demands of a work setting." (Pl. Br. at 21.) To be sure, the ALJ's RFC finding recognized that "[m]entally, the claimant is limited to understanding, remembering, and carrying out simple Spanish instructions," (R. 20-21, Finding No. 4), and the first hypothetical that the ALJ posed to the VE pertained to a person "limited to unskilled [work], remember[ing] and carrying out simple instructions in Spanish." (R. 40.) The VE identified the conveyor line bakery worker position and the potato chip sorter position. (R. 40.) The ALJ then explicitly incorporated into his next hypothetical question to the VE the particular opinions of Dr. Schwartz concerning Negron's limitations:

> Q [ALJ] All right. So, I've got to move to the psychiatry component. I know you don't have access to [Exhibit] 10F, which is Dr. Schwartz's evaluation, but he put the following limitation on – I will only hit the moderates, on the ability to understand, remember and carry out instructions, he put moderate on short, simple instructions. These will be limitations. Moderate on understand and remember details, marked – halfway between

---

[5] "Dysphoric" describes a low mood that may include dissatisfaction, restlessness, or depression. *See* Depression Glossary, http://www.webmd.com/depression/depression-glossary?page=2 (visited Mar. 26, 2013).

> moderate and marked on carry out detailed instructions. And then with the ability to respond appropriately to supervision and co-workers, he put moderate. And work – deal appropriately with work pressures in a usual work setting, and respond appropriately to changes in a routine work setting, slight to moderate. Would those limitations impact the ability to – the definition of moderate would be limitations impacted – seriously impacted but not precluded.
>
> A [VE] Not that – No, that would not [sic] have a negative impact on the occupations I enumerated, but I mean, it would not preclude them. They're unskilled, repetitive types of occupations….

(R. 43-44.) The ALJ's Step Five decision was thus supported by the VE's testimony regarding the jobs that were still within Negron's capacities despite the limitations that Dr. Schwartz recognized from his mental impairments.

Plaintiff has failed to point to anything in the record that would have required the ALJ to include further limitations in his RFC finding or in the questioning of the VE. The VE confirmed that the jobs that he identified could be performed by someone with the limitations assessed by Dr. Schwartz. Plaintiff points to no further particular limitations that should have been posed to the VE, nor are any apparent from the record. To be sure, there is little in the record in the way of mental health evidence apart from Dr. Schwartz's narrative report and check-box assessment form: the state agency reviewing psychologist, Richard Small, Ph.D., manifested his agreement with Dr. Schwartz's opinion (R. 296); Negron reported activities of daily living that did not reflect symptomatology from psychiatric or psychological impairments since his stroke aside from forgetfulness; and he sought psychiatric care, hoping to "reduce

worries and increase self-management of family difficulties" (R. 316), only beginning in June 2011, when his disability case was pending a hearing.[6]

Plaintiff has not demonstrated that the ALJ's RFC finding with respect to his mental capacity was erroneous or that his Step Five determination based upon the VE's testimony was not supported by substantial evidence. We see no basis to vacate the ALJ's decision regarding Negron's capacity for a limited range of light work.

B.      **The rejection of Plaintiff's testimony that he cannot go anywhere unescorted**

Plaintiff also contends that the ALJ erred in failing to accept his testimony that he was unable to go anywhere by himself due to his forgetfulness.[7] (Pl. Br. at 8.) *See also* Pl. Br. at 20 (asserting that "[a]s a result of the stroke residuals, he was left forgetful, with marked ability [sic] to carry out detailed instructions, and whenever he left his home he had to be accompanied by someone else because he was fearful of getting lost and forgetting as to where he was going"). Plaintiff does not otherwise support this contention that the ALJ erred in his credibility assessment.

---

[6]  The record does not reflect that Negron's primary care physicians at the St. Joseph health center referred him for psychiatric treatment or recommended that he work with a psychotherapist. *Cf.* R. 373, 375 (reflecting referral and renewed referral for occupational and physical therapy for stroke residuals).

[7]  It is undisputed that the VE testified that, if an individual were unable to go to places unaccompanied, he would not be able to sustain work. *See* R. 44 (in response to hypothetical that included restriction that "[h]e can't go anywhere alone" and "[h]e gets lost easily," VE confirmed there would be a negative vocational impact, "especially with – if you can't go places alone, I mean, you are not expected to be accompanied to your job everyday. He can't – you know, you have to be able to – to be able to go places by yourself.").

Social Security Ruling 96-7p describes the particular responsibility of an ALJ to provide in his decision "specific reasons for the finding on credibility, supported by the evidence in the case record," and to "be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. As the ruling further sets out, the ALJ cannot make a credibility determination based upon intuition. Rather, "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." *Id*. *See also* R. 21 (ALJ decision identifying SSR 96-7p as establishing requirements to be considered in making RFC finding).

As the ALJ explained in his decision, he found Plaintiff to be only partially credible. He could not find Plaintiff's statements as to the severity of his limitations to be more credible than as set forth in the ultimate RFC finding because, as to his mental impairments,[8] Negron's statements "are not supported by the minimal conservative treatment record and the claimant's documented capabilities." (R. 24.) Negron contended at the hearing that he had not gone out by himself anywhere since the stroke because he gets lost. (R. 37-38.) He also claimed that he had auditory and visual hallucinations. (R. 38.) The ALJ noted that the record showed only

---

[8] The ALJ also suggested that the objective evidence in the record concerning treatment of Negron's physical impairments "do[es] not support the severity of limitations that Mr. Negron has alleged." (R. 23.) The ALJ noted that after hospitalizations for stroke and carotid endarterectomy with patch angioplasty, Plaintiff was repeatedly non-compliant with treatment for hypertension, diabetes, and stroke management. The ALJ also noted that "[d]espite his physical and mental limitations, the claimant retains the capacity to take care of personal needs, prepare small meals, walk to the park, drive two times per week, shop for clothing, pay bills, count change, handle a savings account, and watch television (Exhibit 4E)." (R. 24.) These activities appeared incongruent with Negron's hearing testimony, noted by the ALJ (R. 22), that he could
*(continued…)*

one recent visit to a mental health provider and prescribed medication. He also noted that even during a time in which Negron was not receiving treatment and counseling, Dr. Schwartz's mental status examination in the consultative examination of May 15, 2010 showed Negron to be fully oriented, that his thinking processes were productive, spontaneous, goal-directed, relevant, and coherent, and that he showed no loosening of association or flight of ideas. (R. 280.) The ALJ also observed that there was no evidence to support Negron's testimony as to alleged ongoing auditory and visual hallucinations. (R. 24.) The ALJ noted that, "[d]espite his physical and mental limitations," Negron was able to "take care of personal needs, prepare small meals, walk to the park, drive two times per week, shop for clothing, pay bills, count change, handle a savings account, and watch television (Exhibit 4E)." (R. 24.)

The ALJ provided the requisite reasoning for his credibility finding that Negron was not credible regarding the severity of his limitations beyond the limitations reflected in his RFC finding. As demonstrated above, the ALJ's reasons are grounded in the evidence. Plaintiff has not demonstrated that the ALJ's credibility finding offers any basis to set aside the decision. The ALJ was permitted, on the record before him, to reject Plaintiff's contention that he could go nowhere by himself because he would get lost. The fact that the VE testified that this restriction would render someone unable to sustain substantial gainful activity is thus irrelevant.

---

only sit for 20-30 minutes at a time, stand for 15 minutes, and walk for 20 minutes.

## V. CONCLUSION

As set forth above, we have concluded that the ALJ's RFC finding was supported by substantial evidence in the record. Moreover, we do not find Plaintiff to have demonstrated that the ALJ erred when he rejected, as not fully credible, Plaintiff's testimony that he could not leave the house unaccompanied or else he would get lost. The ALJ complied with his obligation to provide specific reasons for this finding on credibility and demonstrated that his credibility finding was supported by substantial evidence. Our recommendation follows.

## **RECOMMENDATION**

**AND NOW**, this 27th day of March, 2013, upon consideration of the brief in support of review filed by Plaintiff and Defendant's response thereto (Doc. Nos. 7 & 9), as well as the administrative record, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that Plaintiff's request for review be **DENIED** consistent with this Report.

BY THE COURT:

/s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE